UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANGEL MILES ON BEHALF OF                    CIVIL ACTION
ANDRE MILES AND ANDREA MILES,
AND ANDRE MAGEE, SR.
                                            NO. 10-1797
VERSUS

VT HALTER MARINE, INC.                      SECTION "B"(4)

ORDER AND REASONS

Before the Court is Defendants', VT Halter Marine, Inc. and Maritrans Operating Company, LP ("Defendants"), Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rec. Doc. No. 39), and Defendants' Motion for Partial Summary Judgment (Rec. Doc. No. 49), both of which are opposed (Rec. Doc. Nos. 44, 63). For the following reasons,

IT IS ORDERED that the motions are hereby GRANTED.

This action arises out of the death of Andre Magee, Jr. ("Magee"), who fell while working on a barge under construction and died as a result of the injuries he sustained on October 24, 2009. Rec. Doc. No. 39-2, at 1. At the time of the incident, Magee was employed as a rigger by Corrosion Control Specialists, Inc. ("CCSI") and was working on a barge under construction in a shipyard owned and operated by Defendant VT Halter Marine, Inc. ("Halter") in Pascagoula, Mississippi, where the barge was moored in navigable waters. Rec. Doc. No. 39-2, at 1; Rec. Doc. No. 44, at 3. The barge at issue was owned and commissioned by Defendant

Maritrans Operating Company, LP ("Maritrans").  Rec. Doc. No. 39-2, at 1.  Halter and Maritrans had executed a Vessel Completion Contract on April 2, 2009, whereby Halter agreed to complete construction of a "partially constructed articulated tug-barge unit (the "ATB unit," also known as Tug-Hull No. 7800 and Barge-Hill No. 7801...) to complete and redeliver to [Maritrans] at [Halter's] Pascagoula Operations [shipyard]." *Id.* at 2.  Construction on the barge had begun in April 2006 at Bender Shipbuilding & Repair Company, Inc. in Mobile, Alabama, and the structure was transferred to Halter's shipyard for completion in March 2009. *Id.*

The Complaint, filed on behalf of Magee's alleged illegitimate minor children and Magee's father, asserts that admiralty and maritime jurisdiction exists as the case is brought pursuant to the General Maritime Law and 33 U.S.C. § 905(b).  *Id.* at 2; *see* Rec. Doc. No. 1, at 2.  Specifically, § 905(b) of the Longshore and Harbor Worker's Compensation Act (LHWCA) allows a claim to be made against the vessel as a third party for the recovery of damages for injuries caused by the vessel's negligence.  Additionally, a worker covered by the LHWCA may also recover from third parties under general maritime law tort principles.  Plaintiffs have therefore named Maritrans, the vessel owner, and Halter, the ship builder, as Defendants.  *See* Rec. Doc. No. 44, at 1.  Plaintiffs additionally recently amended their Complaint to allege diversity jurisdiction as an alternative basis for subject matter jurisdiction.  *See* Rec.

2

Doc. No. 30.

## I.   Motion to Dismiss

Defendants argue that the barge on which Magee was working was not a vessel for purposes of admiralty jurisdiction; therefore, Plaintiffs cannot establish jurisdiction under admiralty law, general maritime law, or 905(b), and the only basis for subject matter jurisdiction available is diversity of citizenship pursuant to 28 U.S.C. § 1332. *Id.* at 6.  Specifically, Defendants contend that because the barge on which Magee was working was under construction at the time of the accident and thus not fit for the purpose for which it was intended, i.e. an ocean going tank/container barge vessel carrying liquid cargo, the barge was not a "vessel" for purposes of admiralty jurisdiction. *Id.* at 8. Defendants urge that because Plaintiffs cannot establish that Magee was working on a vessel sufficient to confer admiralty jurisdiction, Plaintiffs' claims that arise under admiralty law, general maritime law, or 905(b) must be dismissed. *Id.* at 9. Additionally, Defendants maintain that Plaintiffs' action does not lie in maritime tort because Magee was engaged in "ship construction" work at the time the incident, which is not a traditional maritime activity sufficient to give rise to a maritime tort.  Rec. Doc. No. 47, at 5-6.

Plaintiffs argue that the requirement that an object must be placed in navigation for its intended purpose to be considered a

vessel is applicable under the Jones Act only. Rec. Doc. No. 44, at 1-2. Plaintiffs maintain that they are not claiming that Magee was a Jones Act seaman, but rather, that their claims arise under the LHWCA, under which the term "vessel" is afforded a much broader definition, namely any watercraft used or capable of being used as a means of transportation. *Id.*; Rec. Doc. No. 51, at 2. Indeed, Plaintiffs contend that the key inquiry in the case at bar is whether the injury occurred on navigable waters, which undisputedly happened here. *Id.* at 2-3. Plaintiffs further state that shipbuilders are explicitly listed in the definition of the term "employee" provided by the statutory language of the LHWCA; therefore, Plaintiffs can establish a maritime tort or maritime nexus. Rec. Doc. No. 51, at 3-4. Plaintiffs also dispute whether the barge on which Magee was working had been completed at the time of the accident, as Magee's father, who was employed by CCSI as a sandblaster and also working on the project at issue, stated in his deposition testimony that the vessel was "already built." Rec. Doc. No. 44, at 4.

Defendants contend that because the barge on which Magee was working at the time of the incident was not yet completed, the structure was not a vessel for purposes of admiralty jurisdiction. After a review of applicable case law from the United States Supreme Court and the Unites States Fifth Circuit Court of Appeals, this Court agrees.

4

In *Stewart v. Dutra Construction Company*, 543 U.S. 481 (2005), the United States Supreme Court addressed whether a dredge was a vessel under the LHWCA. The First Circuit Court of Appeals had applied its test for vessel status, which asked whether a craft was primarily used for transportation and if not whether the craft was motionless or moving at the time of the plaintiff's injury, to hold that the dredge at issue was not a vessel, because any navigation was incidental to the craft's primary function of construction and the dredge was stationary at the time of the incident. *Stewart*, 543 U.S. at 485-86. The Court rejected this test, however, finding that although Congress did not explicitly define "vessel" in the LHWCA or the Jones Act, it had already defined the term "vessel" elsewhere, as 1 U.S.C. § 3 provides that the word "vessel" includes every description of water-craft or other artificial contrivance used, or capable of being used, as a means of transportation on water. *Id.* at 489. The Court noted that § 3 codified the meaning that the term "vessel" had acquired in general maritime law, and further stated that prior to the passage of the LHWCA and the Jones Act, courts often found that dredges were indeed vessels pursuant to the definition provided in § 3. *Id.* at 490. The Court concluded that under § 3, "a 'vessel' is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment," and because the dredge at issue was engaged in maritime transportation at the

time of the injury, it was a vessel for purposes of the LHWCA. *Id.* at 497.

Subsequently, the United States Fifth Circuit Court of Appeals analyzed the effect of the *Stewart* decision on its longstanding precedent holding that a watercraft under construction is not a "vessel in navigation" for purposes of the Jones Act. *Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295 (5th Cir. 2008). The court found that the *Stewart* decision did not effectively overrule that precedent "because the decision did not concern or address the point at which a vessel-to-be actually becomes a vessel." *Id.* at 296. While *Cain* involved an issue under the Jones Act, we find the Fifth Circuit's opinion and reasoning equally applicable here, as the Fifth Circuit has stated that *Stewart*'s analysis of the term "vessel" clearly applies for purposes of both the Jones Act and the LHWCA. *Id.* at 299; *see Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 448 (5th Cir. 2006). Additionally, prior Fifth Circuit jurisprudence has similarly found that an unfinished watercraft is not a vessel for purposes of admiralty jurisdiction and therefore cannot be a vessel for purposes of a § 905(b) claim under the LHWCA. *Rosetti v. Avondale Shipyards, Inc.*, 821 F.2d 1083, 1084-85 (5th Cir. 1987); *see Richendollar v. Diamond M Drilling Co., Inc.*, 819 F.2d 124 (5th Cir. 1987).

In reviewing the Court's decision in *Stewart*, the Fifth Circuit in *Cain* concluded that the opinion was not intended to

6

apply to watercraft that are still under construction. *Cain*, 518
F.3d at 300. While the court noted that the language in *Stewart* is
"admittedly broad," it further stated:

> *Stewart* examined an already-completed structure in use
> for its intended purpose. *Stewart* did not concern what
> to do with ships and other structures under construction,
> and so the Court did not address whether § 3's definition
> of vessel applies to incomplete structures that may be in
> a dry dock or a floating shipyard.

*Id.* at 300-01. The court additionally considered the historical
tradition of vessels under construction being treated differently
from completed vessels, as vessels under construction have been
held to give rise to neither a maritime contract nor a maritime
tort. *Id.* at 301 (citing *The Francis McDonald*, 254 U.S. 242, 243-
33 (1920); *Williams v. Avondale Shipyards, Inc.*, 452 F.2d 955, 958,
n.5 (5th Cir. 1971); *Alfred v. MV Margaret Lykes*, 398 F.2d 684, 685
(5th Cir. 1968)). Indeed, the court stated that it "do[es] not
read *Stewart* to change this body of law, so that a structure under
construction remains a non-vessel until it is complete and ready
for duty upon the sea." *Id.* In concluding that the structure at
issue in *Cain* was not a vessel as it lacked equipment necessary for
its operations and therefore was not fit for service, the court
reiterated that while the *Stewart* decision expanded the types of
unconventional and special purpose watercraft that must now be
considered vessels, it did not consider the separate issue of when
a vessel-to-be becomes a vessel in the first place. *Id.* at 302-03.

Accordingly, the court found that *Stewart* does not require modification of the court's existing precedent regarding the vessel status of incomplete watercraft.  *Id.* at 303.

The Fifth Circuit additionally recently reaffirmed its prior precedent concerning admiralty jurisdiction over tort claims in the context of vessels under construction in *Casas v. U.S. Joiner, LLC*, 2010 WL 816582 (5th Cir. 2010).  There, the court stated:

> 28 U.S.C. § 1333(1) gives district courts original jurisdiction over "any civil case of admiralty or maritime jurisdiction."  A party seeking to invoke admiralty jurisdiction over a tort claim must show that the tort has (1) a "maritime situs" and (2) a "maritime nexus" (*i.e.*, that the alleged wrong bears a "significant relationship to a traditional maritime activity"). *Taylor v. Kennedy Engine, Inc.*, 861 F.2d 127, 128 (5th Cir. 1988).  Maritime situs in conceded.  Citing this court's decision in *Hollister v. Like Constr. Co.*, 517 F.2d 920 (5th Cir. 1975) (per curiam), the district court found that Casas's tort claim had no maritime nexus because U.S. Joiner's alleged negligence arose in the context of shipbuilding, which is not a maritime activity.  Casas argues that the activity that caused his injury bore a significant relationship to maritime activity because his work on the LPD-19 was necessary for the vessel to accomplish its purpose and essentially asks us to ignore the "flawed logic" of *Hollister*. *Hollister* has been repeatedly relied upon by this court. *See Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 298 (5th Cir. 2008) (noting the "historic tradition that vessels under construction give rise to neither a maritime contract nor a maritime tort"); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1187 (5th Cir. 1984) (rejecting admiralty jurisdiction and citing *Hollister* for the proposition "that an injury to a ship construction worker on board a ship under construction and lying in navigable waters is not a maritime tort"); *see also Owens-Illinois, Inc. v. U.S. Dist. Court for the W. Dist. Of Wash.*, 698 F.2d 967, 970 (9th Cir. 1983) (tort claims arising from asbestos exposure during new ship construction do not bear a significant relationship to traditional maritime activity); *Keene Corp. v. U.S.*,

      700 F.2d 836, 844 (2d Cir. 1983) ("a tort arising out of work on an uncompleted vessel has been held to fall outside admiralty jurisdiction."). This panel lacks authority to overrule circuit precedent. *Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999).

*Casas*, 2010 WL 816582 at *1.

      Despite Magee's father's contention that the ship was "built" at the time of the incident (Rec. Doc. No. 44, at 4), the evidence indicates otherwise. James William Wilson, Jr. ("Wilson"), a project manager and senior engineer employed by Overseas Shipping Group ("OSG"), a successor company of Maritrans, submitted an affidavit stating that the barge was not complete on October 24, 2009. Rec. Doc. No. 39-6. Wilson's duties include supervising shipbuilding sites, ensuring that the vessels under his supervision comply with all regulatory requirements and codes which must be met before such vessels are documented and permitted to trade on the high seas, and executing certain requirements of shipbuilding contracts. *Id.* Specifically, Wilson provides that the intended purpose of the barge was to transport liquid cargo; however, as of the date of the accident, the barge unit was not capable of transporting any liquid cargo, as the unit's liquid cargo piping system had not been tested as required by law and the American Bureau of Shipping; the valves used to regulate the intended liquid cargo had not yet been installed; the hydraulics system used to control the valves was incomplete; the cargo wash system had not been completely installed; the cargo containment coamings, which

9

line the perimeter of the deck and prevent any spill into waterways were incomplete; and the residual oil vacuum system, which evacuates any residual cargo from the tanks, had not been completely installed. *Id.* Additionally, the "Builder's Certification and First Transfer of Title" and the "Delivery and Acceptance Certificate" establish that the vessel was completed in 2010, and specifically accepted by OSG on March 12, 2010. Rec. Doc. No. 47, at 2-3; Rec. Doc. No. 47-2. Furthermore, the United States Coast Guard did not issue a Certificate of Documentation for the completed barge and tug unit until March 16, 2010. Rec. Doc. No. 47, at 3; Rec. Doc. No. 47-3.

Accordingly, we find that the barge was under construction, incomplete, and not fit for its intended purpose at the time of the incident causing Magee's injuries. *See Wells v. Ali*, 2008 WL 5381308, *1 (5th Cir. 2008); *Collins v. Morgan Stanley Dean Witter*, 224 F.2d 496, 498 (5th Cir. 2000). The structure was therefore not a vessel for purposes of admiralty jurisdiction, and Plaintiffs' claims that arise under admiralty law, general maritime law, and § 905(b) of the LHWCA must be dismissed.

## II.  Motion for Partial Summary Judgment

Defendants seek dismissal of Andre Magee, Sr.'s claims of mental anguish allegedly suffered as a result of witnessing the loss of his son. Rec. Doc. No. 49-3, at 1. Defendants urge that the general maritime law, should it apply, does not allow for

bystander damages or independent mental anguish claims in wrongful death actions. *Id.* Further, Defendants contend that if general maritime law does not apply, Louisiana's conflict of law principles mandate the application of Mississippi law to this issue, under which Magee cannot recover because he neither witnessed the incident nor offered "substantial proof" of "demonstrable harm." *Id.* at 1-2. Defendants also maintain that Magee, Sr.'s claims should be dismissed pursuant to Louisiana jurisprudence, as Magee, Sr. has not established that the distress he allegedly suffered was severe and debilitating. *Id.* at 2.

Plaintiffs argue that regardless of whether this Court's jurisdiction lies in admiralty or diversity, Louisiana law should apply to the issue of Magee, Sr.'s claims, under which Defendants' motion should be denied. Rec. Doc. No. 63, at 2-3. Plaintiffs contend that Magee, Sr.'s emotional distress was severe and debilitating, as he sought counseling from his pastor and missed months of work as a result of the incident. *Id.* at 6. Moreover, Plaintiffs urge that the nature and extent of his anguish should be determined by the trier of fact. *Id.*

## A.   Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986).  Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  *Id.*  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

## B.   Choice of Law

As this Court previously found that admiralty jurisdiction is inapplicable to this matter, the remaining basis for subject matter jurisdiction is diversity, which requires the application of Louisiana's choice of law rules pursuant to *Klaxon v. Stentor Electric Co.*, 313 U.S. 487 (1941), and its progeny.  While Louisiana's general rule is to apply the law of the state whose policies would be most seriously impaired if its law were not applied to that issue, the Louisiana Civil Code provides a more

12

specific provision dealing with issues of loss distribution and financial protection that governs the instant issue. *See* La. Civ. Code arts. 3542, 3544. Specifically, Louisiana Civil Code Article 3544 provides in pertinent part:

> Issues pertaining to loss distribution and financial protection are governed, as between a person injured by an offense or quasi-offense and the person who caused the injury, by the law designated in the following order:
>
> (2) If, at the time of the injury, the injured person and the person who caused the injury were domiciled in different states: (a) when both the injury and the conduct that caused it occurred in one of those states, by the law of that state;

As the parties here are domiciled in different states, and the alleged injury and conduct that caused it both occurred in Mississippi, the domicile of Halter (*see* Rec. Doc. No. 1), pursuant to Louisiana's choice of law rules, Mississippi law applies to this issue. While this Court recognizes that the Louisiana Civil Code provides an exception where the general rule should prevail over the specific so that the law of the state whose policies would be more seriously impaired if its law were not applied to the issue should apply, such exception is described as an "escape mechanism," reserved for the "truly exceptional cases," and thus, we do not find its application warranted here. *See* La. Civ. Code art. 3547 and Revision Comment thereto.

**C.  Magee, Sr.'s Mental Anguish Claim**

In determining a claim for bystander damages under Mississippi law, the following criteria must be considered:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.   (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distance relationship.

*Entex, Inc. v. McGuire*, 414 So.2d 437, 444 (Miss. 1982) (quoting *Dillon v. Legg*, 68 441 P.2d 912, 920 (Cal. 1968)).   Courts applying Mississippi law have consistently granted summary judgment dismissing third party claims for mental anguish when the alleged distress suffered was not caused by "contemporaneous observance of the accident."   *Moore v. Kroger Co.,* 800 F.Supp 429, 432-34 (N.D.Miss. 1992); *Summers ex rel. Dawson v. St. Andrew's Episcopal School, Inc.*, 759 So.2d 1203, 1209-1212 (Miss. 2000); *O'Cain v. Harvey Freeman & Sons, Inc. Of Mississippi,* 603 So.2d 824, 829-30 (Miss. 1991).   Indeed, in *Moore, supra,* the United States District Court for the Northern District of Mississippi concluded that regardless of the degree of fault or negligence alleged, "the range of foreseeable plaintiffs does not include after-the-fact witnesses of the results of an accident as opposed to witnesses of the accident itself."   800 F.Supp. at 434.

Here, although Magee, Sr. may have been "near" the scene of the accident for purposes of the first factor to be considered, it is undisputed that he did not contemporaneously witness his son's fall.   Magee, Sr. specifically stated in his deposition testimony

14

that he was working in a separate part of the barge, about a five to ten minute walk from where his son's accident occurred, that he learned of the incident from his foreman, Clinton Harris, and that when he came upon the scene, an estimated five to ten minutes later, he witnessed the aftereffects of the incident, namely five or six others performing resuscitation efforts and attempting to aid his son by placing an oxygen mask around his neck and a stretcher under his body. *See* Rec. Doc. No. 49-4. Because Magee, Sr. did not actually witness the accident causing his son's injuries, he was not a bystander pursuant to the criteria provided by Mississippi jurisprudence and therefore Defendants' Motion for Partial Summary Judgment must unavoidably be granted.

New Orleans, Louisiana, this 27th day of May, 2011.

UNITED STATES DISTRICT JUDGE